UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FIRST RESPONSE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:13-cv-0452 |
| ) | |
| v. ) | Judge Trauger |
| ) | |
| TMC SERVICES, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM**

Pending before the court is the defendant TMC Services, Inc.'s Motion to Dismiss for Lack of Jurisdiction (Docket No. 5). Also before the court is the plaintiff's Motion to Remand (Docket No. 10). For the reasons discussed herein, the defendant's Motion to Dismiss will be denied and the plaintiff's Motion to Remand will be granted.

**INTRODUCTION**

This is an action for breach of contract in which the plaintiff alleges that the defendant failed to fully compensate it for work performed under a written contract (the "Agreement"). The Agreement, which is attached to the Complaint, includes a forum selection clause designating the Chancery Court of Davidson County, Tennessee as the exclusive jurisdiction for litigation related to the Agreement and a choice of law provision stating that the Agreement is governed by Tennessee law. The defendant, TMC Services, Inc. ("TMC"), is a Massachusetts corporation with its principal office in Franklin, Massachusetts. (Docket No. 1, Ex. 1; Docket

1

No. 7 ¶¶ 2-3.) The plaintiff, First Response, Inc. ("First Response"), is a Tennessee corporation with its principal place of business located in Goodlettsville, Tennessee. (Docket No. 1, Ex. 1.)

After removing the action to this court on the grounds of diversity jurisdiction, the defendant filed the instant Motion to Dismiss for lack of personal jurisdiction. Specifically, the defendant argues that the forum selection clause and choice of law provision of the Agreement between TMC and First Response are unenforceable because they violate a New York statute governing construction contracts and, therefore, the defendant has not consented to the jurisdiction of the Tennessee courts. The plaintiff opposes the defendant's motion and asks the court to remand the case to the Chancery Court.

## BACKGROUND[1]

Defendant TMC performs environmental services like remediation and often performs its services in response to emergencies. After Hurricane Sandy devastated the northeastern United States in late October 2012, TMC was retained by property owners to perform environmental cleanup. (Docket No. 1, Ex. 1 ¶ 5; Docket No. 7 ¶ 4.) First Response solicited TMC on November 1, 2012, offering its services as a subcontractor for remediation work following the superstorm. First Response and TMC entered into the Agreement on November 2, 2012. The Agreement sets forth that First Response "may from time to time be called upon to provide" certain services to TMC, including "environmental consulting, emergency response, remediation services, industrial cleaning services, transportation and waste disposal and/or other assistance."

---

[1] Unless otherwise noted, the facts are drawn from the Complaint (Docket No. 1, Ex. 1) and the parties' affidavits submitted in support of their briefing related to the Motion to Dismiss for Personal Jurisdiction (Docket Nos. 7, 9).

(Docket No. 1, Ex. 1-A.) The Agreement does not include any reference to Hurricane Sandy or the geographic areas affected by the storm. (*Id.*)

Under the Agreement, projects would be assigned to the plaintiff through work orders that would contain, *inter alia*, the work to be performed, the chemical name and quantity of materials to be removed, deadlines, and billing arrangements. The Agreement states that payments to First Response should be made within thirty days of invoice. The Agreement also includes a forum selection clause and a choice of law provision:

> 17. Enforcement. The parties stipulate and agree that the Chancery Courts of Davidson County, Tennessee, shall have proper and exclusive jurisdiction and venue over any suits that may arise out of this Agreement or any work undertaken hereunder. In the event legal action is initiated to determine or enforce a party's rights or responsibilities hereunder or under any Work Order issued pursuant hereto, the prevailing party shall be entitled to recover its reasonable attorney's fees and costs.
>
> …
>
> 19. Governing Laws. This Agreement shall be governed by and interpreted under the laws of the State of Tennessee.

(Docket No. 1, Ex. 1-A ¶¶ 17, 19.)

First Response alleges that, pursuant to the Agreement, TMC issued the plaintiff three work orders. According to the Complaint, the orders directed First Response to perform remediation work at three different properties in New York City. The Complaint further alleges that First Response performed work at those locations that amounted to $493,117.57 in value.

First Response pleads that TMC has failed to fully compensate First Response for its work performed under the Agreement. First Response further alleges that TMC has been substantially paid under its agreements with the property owners of the work sites, but that TMC

3

has only paid First Response $275,000 for the work that it performed at those locations. First Response avers that TMC is liable to First Response in an amount not less than $201,423.44 for work performed, plus interest and attorney's fees.[2] The Complaint includes three legal grounds for the plaintiff's request for damages: breach of contract, a violation of the Tennessee Prompt Pay Act, and unjust enrichment.

TMC submits that it found issues with the plaintiff's invoices and disputed certain charges. On February 15, 2013, First Response filed a Mechanic's Lien (the "Lien") in the New York Supreme Court in New York County on one of the properties where it allegedly performed work, 17 Battery Place. The Lien was in the amount of $469,558.06. TMC posted a bond equal to 110% of the Lien on February 27, 2013, which discharged the Lien. (Docket No. 9, Ex. A.) TMC's Chief Operating Officer, Mark Haynes, submitted an affidavit to the court stating that, around March 25, 2013, TMC and First Response executed a Partial Settlement Agreement, pursuant to which TMC paid First Response $275,000.[3] (*See* Docket No. 7 ¶¶ 11-13.) Subsequently, First Response filed an amended lien in the New York Supreme Court reducing the lien amount to $198,728.89. (*Id.*)

On April 4, 2013, First Response commenced this action in the Chancery Court for Davidson County. (Docket No. 1, Ex. 1.) On May 14, 2013, TMC filed a notice of removal in

---

[2] The forum selection clause includes a provision that the prevailing party is entitled to recover reasonable fees following legal action related to the Agreement.

[3] It is unclear whether the $275,000 that TMC paid to First Response in the Partial Settlement Agreement was meant to compensate First Response for solely the work it performed at 17 Battery Place (where the Lien had attached) or for the work it performed at all three properties in New York City under the Agreement. (*See* Docket No. 7 ¶¶ 11-13.)

4

this court pursuant to 28 U.S.C. §§ 1441 and 1446. (Docket No. 1.) Two days later, TMC filed a Motion to Dismiss for Lack of Jurisdiction (Docket No. 5), to which First Response has filed a response in opposition (Docket No. 8), and TMC has replied (Docket No. 14). On June 10, 2013, First Response filed a Motion to Remand (Docket No. 10), to which TMC has filed a response in opposition (Docket No. 15).

## ANALYSIS

**I. Motion to Dismiss for Lack of Personal Jurisdiction**

### A. Standard

The Sixth Circuit has set forth a well-defined procedural design aimed at guiding district courts in their disposal of Fed. R. Civ. P. 12(b)(2) motions for lack of personal jurisdiction. *Dean v. Motel 6 Operating, L.P.*, 134 F.3d 1269, 1271-72 (6th Cir. 1998). First Response, as the party seeking assertion of personal jurisdiction, bears the burden of showing that personal jurisdiction exists. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991); *see also CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996). To do so, a plaintiff may not simply rely on the allegations set forth in the complaint but must, by affidavit or otherwise, set forth specific facts showing the existence of jurisdiction. *Theunissen*, 935 F.3d at 1458.

In considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a court has three options. It may (1) rule on the motion on the basis of the affidavits submitted by the parties, (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion. *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). It is in the court's discretion, based on the circumstances of the case, which path to choose. *Id.* Where, as here, both sides have submitted competing affidavits and requested a

5

decision on that basis, it is appropriate for the court to decide the jurisdictional issue based on the affidavits presented. *Theunissen*, 935 F.2d at 1458. In absence of an evidentiary hearing on the issue, the court must consider the pleadings and affidavits in a light most favorable to the non-moving party—here, First Response. *Id.* at 1458-59. To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a *prima facie* showing of personal jurisdiction over the defendant. *Id.* "Dismissal in this procedural posture is proper only if *all* the specific facts which the plaintiff . . . alleges collectively fail to state a *prima facie* case for jurisdiction." *Id.*; *see also Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360-61 (6th Cir. 2008) (referring to the plaintiff's burden in this context as "relatively slight").

Here, the parties dispute only one issue related to the question of personal jurisdiction—the validity of the Agreement's forum selection clause.

**B. Minimum Contacts Analysis**

    1.    <u>Generally</u>

Personal jurisdiction over TMC is only proper if it meets the specific limitations of Tennessee's long-arm statute and the constitutional principles of due process. *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003). Tennessee's long-arm statute has been consistently construed to extend to the limits of federal due process and, therefore, the two inquiries are merged, and the court need only determine whether exercising personal jurisdiction over TMC here is consistent with federal due process requirements. *Id.* In order for due process to permit the exercise of personal jurisdiction over a non-resident defendant, such as TMC, that defendant must have "certain minimum contacts with the [forum

state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

It is well-settled that the minimum contacts standard can be met by a forum selection clause that is "freely negotiated' and is not "unreasonable and unjust." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). The Sixth Circuit has explained that "the requirement that a court may have personal jurisdiction over a party is a *waivable right* and there are a variety of legal arrangements whereby litigants may consent to the personal jurisdiction of a particular court system." *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2009) (emphasis added); *see also Air 1, Inc. v. Bizjet Int'l Sales & Support, Inc.*, No. 07-0146, 2007 WL 1850002, at *5 (M.D. Tenn. June 25, 2007). One such legal arrangement is a forum selection clause that permits contracting parties to "agree in advance to submit to the jurisdiction of a particular court." *Preferred Capital*, 453 F.3d at 721 (citing *Zapata*, 407 U.S. at 10).

As a general rule, a forum selection clause is *prima facie* valid and is enforceable unless it is shown to be unfair or unreasonable. *Zapata*, 407 U.S. at 10; *see Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009) (a "forum selection clause should be upheld absent a strong showing that it should be set aside") (citing *Carnival Cruise Lines v. Shute*, 499 U.S. 585 (1991)); *Security Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 375 (6th Cir. 1999). In order for a forum selection provision to be unreasonable and unjust, the moving party must show that the contractual forum is "so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Zapata*, 407 U.S. at 18. Tennessee law is consistent with the rule of *Zapata*. *See Dyersburg Machine Works, Inc. v. Rentenbach Eng'g Co.*, 650

7

S.W.2d 378, 383 (Tenn. 1983) (courts of Tennessee "should enforce [a forum selection] clause unless the party opposing enforcement demonstrates that it would be unfair and inequitable to do so.").

The Complaint alleges that jurisdiction and venue are appropriate in the Chancery Court for Davidson County because of the Agreement's contractual provisions—specifically, Paragraph 17 of the Agreement, the forum selection clause. (Docket No. 1, Ex. 1 ¶ 3.) TMC disputes the validity of the forum selection clause and argues that, if Paragraph 17 is void, First Response has alleged no alternative valid grounds for the court's personal jurisdiction over the defendant.[4] TMC further contends that the choice of law provision, Paragraph 19 of the Agreement, is also invalid. As set forth below, the court finds that the forum selection clause and choice of law provision of the Agreement are enforceable as a matter of law and, therefore, TMC is not entitled to dismissal of the claims against it.

### 2. The Forum Selection Clause

TMC challenges Paragraph 17 by arguing that it is invalid under a New York statute voiding certain venue provisions in construction contracts. (Docket No. 6 at 7.) Paragraph 17 is a mandatory forum selection clause because it identifies an exclusive jurisdiction for litigation related to the Agreement. *See General Elec. Co. v. G. Siempelkamp GmbH & Co.,* 29 F.3d 1095, 1099 (6th Cir. 1994); *Fred Montesi's, Inc. v. Centimark Corp.*, No. 04-2957, 2006 WL 1174480, at *3 (W.D. Tenn. May 2, 2006) ("Mandatory forum-selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum.") (citing *Excell, Inc. v.*

---
[4] Because the court finds that the forum selection clause is valid, it need not assess TMC's alternative arguments related to personal jurisdiction.

*Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 320 (10th Cir. 1997)). New York, like Tennessee and more than a dozen other states, has passed protective statutory restrictions on mandatory forum selection clauses and choice of law provisions in contracts related to the performance of construction work on real property within its state. *See, e.g.*, N.Y. GEN. BUS. LAW § 757 (McKinney 2013); OHIO REV. CODE. ANN. § 4113.62 (West 2013); TENN. CODE. ANN. § 66-11-208 (2013); ARIZ. REV. STAT. ANN. § 32-1129.05 (2010); CALIF. CIV. PRO. CODE § 410.42; IND. CODE § 32-28-3-17; FLA. STAT. § 47.025 (2013); LA. REV. STAT. ANN. § 2779 (2012).[5]

Generally, these statutes render unenforceable forum selection clauses and choice of law provisions in agreements for improvements to real property that designate an out-of-state forum for litigation related to the agreement or another state's law to govern the agreement.

The New York statute provides:

> The following provisions of construction contracts shall be void and unenforceable:
>
> A provision, covenant, clause or understanding in, collateral to or affecting a construction contract, with the exception of a contract with a material supplier, that makes the contract subject to the laws of another state or that requires any litigation, arbitration or other dispute resolution proceeding arising from the contract to be conducted in another state.

N.Y. GEN. BUS. LAW § 757 (McKinney 2013).

---

[5] These protective statutory measures were passed by certain states after 1990, "presumably at the urging of local smaller contractors, subcontractors, and suppliers that believed out-of-state forum-selection clauses were fundamentally unfair." *See* Jason A. Lien, *Forum-Selection Clauses in Construction Agreements: Strategic Considerations in Light of the Supreme Court's Pending Review of Atlantic Marine*, 33 CONSTR. LAWYER 27, at 30 (Summer 2013).

9

New York defines a "construction contract" as "a written or oral agreement for the construction, reconstruction, alteration, maintenance, moving or demolition of any building, structure or improvement, or relating to the excavation of or other development or improvement to land," where "the aggregate cost of the construction project including all labor, services, materials and equipment to be furnished, equals or exceeds one hundred fifty thousand dollars." N.Y. GEN. BUS. LAW § 756 (McKinney 2013). New York's definition of "construction contract" does not explicitly include environmental clean-up or remediation contracts, and the defendant has not cited to any case that supports its assertion that the Agreement was a "construction contract" under New York law. But other states—including Tennessee—drafted similar statutes to void forum selection clauses in contracts related to real property improvements and, in contrast to New York, expressly defined the scope of their statutes more broadly to include additional categories of contracts. *See* LA. REV. STAT. ANN. § 2779 (2012) (rendering unenforceable certain provisions in contracts including purchase orders "for public and private works . . . when one of the parties is domiciled in Louisiana, and the work to be done . . . involve[s] construction projects in this state); FLA. STAT. § 47.025 (2013) (voiding venue provisions in contracts for improvement to real property that require legal action involving a resident contractor). Tennessee intentionally drafted its statute to include contracts for, *inter alia*, "[the] cleanup or removal of hazardous and nonhazardous material or waste from real property."[6] TENN. CODE ANN. §§ 66-11-101; 66-11-208.

---

[6] Tennessee's statute provides: "Except [for improvement of real property performed on property that is only partially located in Tennessee], a provision in any contract, subcontract or purchase order for the improvement of real property in this state is void and against public policy if it

TMC misconstrues the scope of the Tennessee and New York laws by incorrectly assuming that New York's statute reaches the Agreement here. (S*ee* Docket No. 6 at 7.) To the contrary, had New York intended to include environmental remediation work in the protection offered by Section 757, it could have easily done so, as Tennessee did. Last year, a New York state court concluded the same and held that Section 757 does not extend to contracts for environmental remediation of property in New York. *See Sci. Applications Int'l Corp. v. Envtl. Risk Solutions, LLC*, No. 3688-10, 37 Misc. 3d 1201A, at *5 (N.Y. Sup. Ct. Sept. 24, 2012).[7] Because Section 757 does not apply to the Agreement between First Response and TMC, it does not invalidate Paragraph 17's forum selection clause.

TMC has not set forth any additional arguments that might affect the validity of the forum selection clause. For instance, TMC has not asserted that the contract as a whole—or specifically Paragraph 17—was not freely negotiated. In fact, the Affidavit of Mark Haynes, Chief Operating Officer of TMC, states that TMC engaged in negotiations with First Response before signing the Agreement. (Docket No. 7 ¶ 7.) There is no evidence that the Agreement is

---

makes the contract, subcontract or purchase order subject to the substantive laws of another state or mandates that the exclusive forum for any litigation, arbitration, or other dispute resolution process is located in another state." TENN. CODE ANN. § 66-11-208. "Improvement" as it pertains to the Tennessee statute is defined in full at TENN. CODE ANN. §§ 66-11-101(5).

[7] The court concluded that a choice of law provision designating Pennsylvania law was not invalidated by N.Y. Gen. Bus. Law Section 757 because "[t]he subject Agreements provided for environmental remediation of contaminated sites throughout New York" and, therefore, the "Agreement cannot be considered a construction contract." *Sci. Applications Int'l*, 37 Misc.3d 1202A, at *5.

anything less than an arm's-length transaction negotiated in good faith between two sophisticated commercial parties.

TMC has also failed to argue that trying this case in the Chancery Court of Davidson County would be so gravely difficult or inconvenient as to deprive the defendant of its day in court. But even had it made such an argument, TMC had an opportunity during the contract formation process to challenge Paragraph 17, and any inconvenience it might now contest was "clearly foreseeable at the time of contracting." *Zapata,* 407 U.S. at 17-18. Because TMC entered into a valid forum selection agreement and that forum does not effectively deprive TMC of its day in court, the Motion to Dismiss for Lack of Jurisdiction will be denied.

### C. Choice of Law

TMC also argues that Paragraph 19 of the Agreement, a choice of law provision, is unenforceable under Section 757 of the New York law and Tennessee's choice of law rules. For the reasons discussed above, Section 757 does not apply to the Agreement because it is not a construction contract. Therefore, Section 757 does not invalidate the choice of law provision in Paragraph 19.

The parties also dispute the effect of Tennessee choice of law rules on the instant issue. A federal district court is required to apply the choice of law rules of the forum in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998). Therefore, this court must apply Tennessee law to this jurisdictional dispute. The parties agree that Tennessee has adopted the Restatement (Second) of Conflict of Laws (the "Restatement") concerning choice of law provisions in contracts. *See Messer Griesheim Indus., Inc. v. Cryotech of Kingsports Inc.*, 131 S.W.3d 457, 474-75 (Tenn. Ct. App.

12

2003). Under Section 187(2) of the Restatement, a court will apply the designated choice of law from an agreement unless one of two exceptions applies: (1) if the chosen state has no substantial relationship to the parties or the transaction, and there is no other reasonable basis for the parties' choice, or (2) if application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of a particular issue and which, under the rule of Section 188, would be the state of the applicable law in the absence of an effective choice of law by the parties. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2).

Neither exception applies here. First, Section 187(2) does not bar the application of Tennessee law, because First Response is a Tennessee corporation with its principal place of business in Tennessee. *Kipin Indus., Inc. v. Van Deilien Int'l, Inc.*, 182 F.3d 490, 494 (6th Cir. 1999) (domicile is sufficient to meet the substantial relationship test of Section 187(2)(a)) (citing RESTATEMENT § 187 cmt. f); *see also Contech Constr. Prods., Inc. v. Blumenstein*, No. 11-cv-878, 2012 WL 2871425, at *9 (S.D. Ohio July 12, 2012) (same). As to the second exception under Section 187(2), the defendant's sole argument that Paragraph 19 should be invalidated rests on the application of Section 757, which TMC argues reflects New York's "fundamental public policy" against enforcement of the choice of law provision of the Agreement. Because Section 757 does not apply to the Agreement, Tennessee choice of law is appropriate and Paragraph 19 is valid.

## II. The Plaintiff's Motion to Remand

First Response argues that the forum selection clause is enforceable and, therefore, the case must be remanded to the Agreement's contractually designated venue. The court agrees.

13

The rules underlying construction of a contract are well settled. The Tennessee Supreme Court explained that "a cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties." *Christenberry v. Tipton,* 160 S.W.3d 487, 494 (Tenn. 2005). In interpreting contractual language, courts look to the ordinary meaning of the words in the document to ascertain the parties' intent. *Planters Gin Co. v. Fed. Compress & Warehouse Co.,* 78 S.W.3d 885, 889–90 (Tenn. 2002). A court's initial task is to determine whether the language is ambiguous. *Id.* at 890. If the language is clear and unambiguous, the literal meaning controls the outcome of the dispute. *Id.* If, however, the words in a contract are susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by a literal interpretation of the language, and the court must "resort to other rules of construction." *Id.* Courts should only depart from the literal meaning of the contract if the contractual language is found to be ambiguous or subject to multiple interpretations. *Id.*

The court finds that the forum selection clause of the Agreement is clear, unambiguous, and enforceable. Paragraph 17 explicitly states that the Chancery Courts of Davidson County, Tennessee have "proper and *exclusive* jurisdiction and venue over *any* suits that may arise out of this Agreement." (Docket No. 1, Ex. 1-A ¶ 17 (emphases added).) TMC has not presented any alternative arguments for why the court should not follow the express language of the forum selection clause.[8] First Response's Motion to Remand will be granted and the case will be remanded to the Chancery Court of Davidson County, Tennessee.

---

[8] TMC's Opposition to the Motion to Remand merely rehashes its arguments in support of its Motion to Dismiss for Lack of Jurisdiction. (*See* Docket Nos. 5-6, 15.) These recitations fail to provide the court with any alternative rationale for denying the Motion to Remand.

## **CONCLUSION**

For the reasons discussed herein, the defendant's Motion to Dismiss the Complaint will be **DENIED** and the plaintiff's Motion to Remand will be **GRANTED**.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge